UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL RICUPITO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-2389-B |
| | § | |
| INDIANAPOLIS LIFE | § | (part of MDL No. 1983) |
| INSURANCE COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Indianapolis Life Insurance Company's ("Indianapolis Life") Motion for

Summary Judgment filed July 12, 2011 (doc. 31). Having considered the Motion and Plaintiffs'

response thereto, the Court finds the Motion should be and hereby is **GRANTED**. Plaintiffs' breach

of contract claim against Indianapolis Life is hereby **DISMISSED**. Further, Plaintiffs' claims against

Does 1 through 100 are also hereby **DISMISSED**.

## I.

## BACKGROUND[1]

Plaintiffs in this matter are Michael Ricupito; his California corporation, Michael R. Ricupito,

DDS, MS, Inc.; and his defined benefit pension plan, Michael R. Ricupito DDS, Defined Benefit

Pension Plan (collectively, "Ricupito"). Compl. ¶¶ 1-3. Defendants are Indianapolis Life and "Does

---

[1]The background facts are derived from Plaintiffs' Complaint ("Complaint"), filed September 8, 2009.

1 through 100 inclusive," defendants whose identities are unknown at this time.[2] *Id.* at ¶¶ 4, 7. This lawsuit arises from several "VIP" life insurance policies that Indianapolis Life sold to Ricupito. *Id.* at ¶ 10. Ricupito alleges that Indianapolis Life marketed life insurance policies and assured him that he would receive tax benefits through these policies when in fact they were fraudulent tax shelters. *Id.* at ¶¶ 12, 27, 33. The first insurance policy was entered between Ricupito and Indianapolis Life in 1998. *Id.* at ¶ 10. During the policy period, Ricupito paid premiums of approximately $982,905.05, which were then deducted from Ricupito's state and federal tax returns. *Id.* at ¶¶ 11, 14. The IRS and the State of California Franchise Tax Board ("FTB") later denied all deductions. *Id.* at ¶ 15. As a result, in February 2007, Ricupito paid the IRS approximately $367,160.86 and the FTB approximately $79,747 in taxes, penalties, and interest. *Id.* at ¶¶ 16-17. In addition, he "incurred substantial legal fees in defending [himself] from the IRS and FTB." *Id.* at ¶ 18. On or about September 13, 2008, Indianapolis Life issued a check to Ricupito for $930,787.18 at the end of the policy term. *Id.* at ¶ 19. In addition to the policy purchased in 1998, Ricupito Pension Plan purchased three other insurance policies from Indianapolis Life on or about April 21, 2003. *Id.* at ¶ 22. As a result of Indianapolis Life's breach of the first insurance policy and false representations, Ricupito alleges that he justifiably stopped making payments on the three outstanding policies. *Id.* at ¶ 23.        On September 8, 2009, Ricupito filed this lawsuit against Defendants. On Indianapolis Life's Motion to Dismiss, the Court dismissed Count Two (relief based on rescission), Count Three (fraud), and Count Four (negligent misrepresentation), but denied the Motion to the

---

[2]Ricupito requests in his Complaint leave to amend the complaint to allege the true names and capacities of Does 1 through 100 "when the same have been ascertained." *Id.* at ¶ 7. It appears that Ricupito is referring to agents or employees of Indianapolis Life in referring to these fictitious names. *See id.* at ¶ 9.

extent it sought to dismiss Ricupito's breach of contract claim. Mem. Op. Sept. 30, 2010. The September 30, 2010 Order also gave Ricupito twenty days to file an amended complaint, if he sought to replead any claims. *Id.* at 12. Ricupito did not file an amended complaint within twenty days nor has he sought leave to amend after those twenty days passed. On July 12, 2011, Indianapolis Life moved for summary judgment on the Complaint's contract claim. The Motion is now ripe for disposition.

## II.

## LEGAL STANDARD

A.      *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller"), § 3866 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)) (other citations omitted). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)) (other citations omitted). As this case was transferred from California federal district court, the Court applies California state substantive law as to matters of state law. On the other hand, the Court looks to the law of this Court and this Circuit for the controlling Federal Rule of Civil Procedure 56 summary judgment standards.

B.      *Summary Judgment*

The purpose of summary judgment is "to enable a party who believes there is no genuine

dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Id.* at 1075.

## III.

## ANALYSIS

In the present case, Ricupito alleges that Indianapolis Life "assured Plaintiffs that they would receive tax deductions and other tax benefits by purchasing the [Executive VIP] policies which allegedly were specifically designed to produce tax benefits." Compl. at ¶ 12. The Complaint further alleges that Ricupito purchased the policies in order to obtain these tax benefits, he deducted the premiums for these policies on his federal and state tax returns, and the IRS's and FTB's subsequent denials of these deductions "render[ed] [Indianapolis Life's] promises of tax deductions false and constitut[ed] a breach of contract." *Id.* at ¶¶ 13-15.

Under California state law, a breach of contract claim is comprised of four elements: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 272 Cal. Rptr. 387, 395 (Ct. App. 1990) (citing *Reichert v. Gen. Ins. Co. of Am.*, 442 P.2d 377, 381 (Cal. 1968)). Interpretation of an insurance policy and whether a contract is ambiguous are questions of law. *Perez -Encinas v. Amerus Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (citations omitted). To interpret a contract, a court must give effect to the "mutual intention" of the parties, looking first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. *Id.* "[I]f possible, intent is determined solely from the written provisions of the insurance policy," and "[i]f the policy language is clear and explicit, it governs." *Id.* (citations omitted). The Court looks at the objectively reasonable expectations of the policy holder if this

"plain meaning" approach fails. *Id.*

Indianapolis Life moves to dismiss the contract claim because, in its opinion, Ricupito has not and cannot identify any contractual provision that Indianapolis Life has breached given that the policies at issue make no mention of tax benefits.[3] In response, Ricupito seeks to introduce extrinsic evidence regarding Indianapolis Life's promises of tax benefits of the policies.[4] Specifically, Ricupito states through his attached Declaration that Xelan, the marketing agent for the policies issued by Indianapolis Life, discussed the tax benefits of the plans and explained that the insurance policy was the vehicle to obtain these tax benefits through various speakers at semi-annual symposiums which Ricupito attended from 1999 to 2004. Ricupito Decl. ¶¶ 3-5 (attached to Pls.' Opp'n at doc. 34-1). Ricupito also attaches an excerpt from a letter from the law firm of Husch & Eppenberger addressed to a senior vice president of marketing for Indianapolis Life. Ricupito Decl. ¶¶ 7-8; Pls.' Opp'n Ex. 1. This letter is a tax opinion letter for the VIP policies that Ricupito purchased and which was prepared for distribution to potential purchasers such as Ricupito. Ricupito also attaches an excerpt from an Indianapolis Life brochure. Ricupito Decl. ¶ 9, Pls.' Opp'n Ex. 2. The excerpt states that "it should be reasonable to assume the IRS would accept the cash surrender value as the fair market value of the policy," Pls.' Opp'n Ex. 2, which supports Ricupito's claims regarding the § 421(i) plan and policy – that customers would fund the insurance policies inside the company and they would

---

[3]Although discovery has been stayed in this and all related cases in 08-md-1983, *In re: Indianapolis Life Insurance Co. IRS 412(i) Plans Life Insurance Marketing Litigation*, Ricupito did not object to the filing of Indianapolis Life's motion for summary judgment nor did he request that he be able to conduct limited discovery in order to respond to the motion. Accordingly, the motion is properly before the Court at this time.

[4]Neither party disputes the authenticity of the documents attached by the parties as exhibits to the briefing on this motion, and the Court assumes for the purposes of Indianapolis Life's Motion that the documents are authentic.

be distributed out to the individual when the cash surrender value was very low. In Ricupito's view, his affidavit and the attached documents show the intent and implied promise within the policy was the tax benefits, and he argues that this evidence at a minimum raises a fact issue as to whether Indianapolis Life breached its contract. Ricupito also argues that this extrinsic evidence regarding the promised tax benefits is admissible as it will assist the Court in giving effect to the mutual intention of the parties, citing California Civil Code § 1636. Ricupito also cites California Civil Code § 1647, which states that "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

The Court finds Ricupito's arguments unavailing. The Court's examination of the attached insurance policy reveals no mention of any tax benefits or tax deductions, much less the specific tax benefits alleged by Ricupito. Instead, the express principal contractual promise of the policy is a guaranteed death benefit in exchange for annual premium payments. *See* Def.'s Mot. Ex 1 at App. 5.[5] Also, the parol evidence rule generally bars any extrinsic evidence, "whether oral or written [offered] to vary, alter, or add to the terms of an integrated agreement." *Alling v. Universal Mfg. Corp.*, 7 Cal. Rptr. 2d 718, 731 (Ct. App. 1992); *see also* Cal. Code. Civ. Proc. § 1856 ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement."). While Ricupito may argue that the policy was not the entire agreement, there is simply no indication in the policy itself that there were any other agreements

---

[5]Ricupito purchased a total of four policies that are at issue in this case, though Indianapolis Life only attaches the first policy that was purchased, Policy No. 100043870. Ricupito does not argue that there is any difference between the policy attached and the other policies he purchased, nor does he argue that Indianapolis Life was required to attach all four policies.

outside the terms of the policy. Instead, the policy contains a clause stating that the policy and the application, which is attached to the policy, "make up the entire contract." Indianapolis Life Mot. Ex. 1 at App. 11. While perhaps not as explicit as some integration clauses in other contracts, this language and the four corners of the contract make clear that the insurance policy is an integrated agreement. Additionally, there are no ambiguous terms in the contract which Ricupito's proffered evidence would help explain. In light of these findings, Ricupito's parol evidence, whether oral or written, is inadmissible. Given that Ricupito does not point to any provision of the insurance policy that has been breached, and given the Court's finding that the policy is the complete, unambiguous agreement of the parties, Ricupito does not raise a fact issue as to whether Indianapolis Life breached its contracts with Ricupito. *See, e.g., Trauman v. Southland Corp.*, 858 F. Supp. 2d 979, 982 (N.D. Cal. 1994) (granting summary judgment for failure to allege breach of any express contractual promise); *Richter v. Mut. of Omaha Ins. Co.*, 2007 WL 6723708, at *5 (C.D. Cal. Feb. 1, 2007) (breach of contract claim fails absent allegation of breach of specific provision). Accordingly, Ricupito's breach of contract claim against Indianapolis Life must be and hereby is **DISMISSED**.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Indianapolis Life's Motion for Summary Judgment requesting dismissal of Ricupito's breach of contract claim. Count One of Ricupito's Complaint (breach of contract) is hereby **DISMISSED** as to Indianapolis Life .

The Court also notes that at no time has Ricupito sought to amend his Complaint to allege the true names and capacities of Does 1 through 100 as Defendants, nor has he produced any documentation showing that these defendants have been served properly. Accordingly, all claims

against Does 1 through 100 are hereby **DISMISSED**.[6]

Given that the Court has now dismissed all claims against all Defendants in this Order or in the Court's Memorandum Opinion filed September 30, 2010, Ricupito's Complaint is hereby **DISMISSED**.

SO ORDERED.

DATED: August 30, 2011.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[6]Additionally, at no time has Ricupito specifically sought discovery for the purposes of determining the identity of Does 1 through 100. Moreover, the Complaint does not allege that these Defendants were parties to the contracts at issue such that they could be liable for breach of contract.